**YOUNG v. BYNUM.**

No. 3027.

Court of Civil Appeals of Texas. Eastland.
July 17, 1953.

Rehearing Denied Sept. 18, 1953.

Dawson, Jones, Parish & Fillmore, Wichita Falls, for appellant.

R. J. Balch, Seymour, for appellee.

GRISSOM, Chief Justice.

In March, 1952, Mrs. J. T. Livingston, the mother of Hub Bynum, was visiting in Bynum's home in Baylor County. After the death of her husband, Mrs. Livingston had been staying with her children, Mr. Bynum and his sisters, one of the sisters resided in Elbert and the other in Wichita Falls. She would stay with one of her children for a time and, when she wanted to go, the son or daughter with whom she was staying would take her to the home of another. While Mrs. Livingston was visiting the Bynums, Mr. Robert L. Young and wife also visited the Bynums. Mrs. Young is Mr. Bynum's daughter. Mrs. Livingston wanted to visit a daughter, apparently Bynum's half-sister, near Midland and Young and Bynum took her to Midland in Young's car. On the return trip, while Young was driving, the automobile overturned and Bynum and Young were injured. Bynum sued Young for damages and obtained a judgment based on a finding of ordinary negligence. Young has appealed.

The controlling question presented is whether Bynum was the guest of Young or a paying passenger to whom the provisions of Section 1, Article 6701b, Vernon's Ann. Civ.St., the "Guest Statute", is not applicable. Said section reads as follows:

"No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such

transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

Appellant's points are to the effect that the evidence was insufficient, or there was no evidence, to support the judgment; that the court erred in failing to find that Bynum was the guest of Young and that the undisputed evidence showed Bynum was a guest.

Viewed in the light most favorable to appellee, we shall state, or quote, the testimony of appellee on which he must rely to support a finding and judgment based on the conclusion that Bynum paid for his transportation and was not the guest of Young within the meaning of the guest statute.

Mr. Bynum testified to the relationship of the parties as heretofore stated and that on the date of the accident he had been to town and came home about ten o'clock A. M.; that his mother had been wanting to go to Midland to visit her daughter; that Young suggested they take Bynum's mother there. Bynum agreed and asked Young whether his car needed oil; that Bynum furnished the oil for Young's car; that Mrs. Livingston was 79; that her health was not good; she had to have assistance and she could not have made the trip alone on a bus.

"Q. Tell the court what arrangements, if any, you had concerning your Mother after the death of your stepfather. A. She was staying just with first one or other of the children, me and my sister at Elbert, and Wichita Falls; she was just staying with first one and another.

"Q. Had she been staying in your home up until March 2nd? A. Yes, sir, she would stay for one day to weeks at a time but she had been there a few days at this time; wherever she wanted to go, we would take her."

Mr. Bynum testified that they had dinner at Rotan on the way to Midland and "I paid for the meals there. Mother had given me a little money." He testified that he drove part of the time and Young drove part of the time; that they arrived at the daughter's place about eight o'clock, stayed an hour and started home.

"Q. Now, then, during this trip while you were taking your Mother to Midland, tell the court what matter of assistance was rendered by you to your Mother. A. In getting in and out of the car, she had to be assisted and getting across the creek, she had to be assisted.

"Q. I believe you testified she could not ride the Bus? A. We didn't let her ride the bus; she wasn't able to ride the bus."

Bynum testified that on the return trip he and Young took turns driving; that when they left Munday Young was driving; the pavement was slick and it had been drizzling since they left Midland; that the road had a "turtle back"; that when they were nearly home Young was driving.

" * * * We was driving along and everything was running smooth and the car began to whip across the highway and that is all I can testify to; it knocked me out.

"Q. The car began to whip? A. Yes, sir.

"Q. About how far did it whip? A. Something like between 50 and 100 yards; I went back out there later on."

Bynum testified that Young was driving 55 to 60 miles an hour; that they were nearly home and Bynum said to Young, "It won't be long now;" that Young did not reply and the car began to "weave". The evidence was sufficient to show that Mr. Young went to sleep and that caused the accident. Bynum testified that the Youngs did not come from Fort Worth for the purpose of taking Mrs. Livingston anywhere but that while he was there Mrs. Livingston wanted to go to Midland to visit her daughter and Young suggested that he and Bynum take her and Bynum agreed.

"Q. I believe you suggested checking his oil? A. I let him have some oil I had there on the place.

698

"Q. Who paid for the rest of the trip? A. Mother.

"Q. The only contribution you put in was the oil? A. Yes, sir, and a day's work going down there.

"Q. Mr. Bynum, did you receive anything for making that trip except you were to furnish the oil, your mother the meals and· gasoline? A. No.

"Q. Was there any purpose in making this trip other than to take your Mother to Midland? A. No.

"Q. Did your mother actually pay the expense? A. All except the drinks.

"Q. Both of you paid for that? A. The best I remember, I paid for all of that."

Mr. Bynum testified that he had been over the road where the accident occurred many times before the accident; that he did not caution Mr. Young about his driving; that he did not mention the speed.

"Q. Mrs. Livingston had never lived with your daughter and Mr. Young? A. No.

"Q. Did they have any reason to want your mother back in Midland? A. Nothing more than she wanted to go. ·

"Q. Just as a good turn to you and your mother. A. That is all I know.

"Q. I believe you said there was no business connection with the trip? A. Nothing more than taking Mother.

"Q. Mr. Young had no financial interest in going to Midland? A. No."

Bynum testified that his mother was financially able to care for herself; that after the death of her husband it was agreed between her children that they would take her from the home of one child to that of another and that she should live with each as long as she wanted to. Young married Mrs. Livingston's granddaughter. The Youngs were not parties to this agreement. ·

Although we are impressed by the very able brief of the appellee, we have concluded that the undisputed evidence shows that Bynum was a guest and, therefore, not entitled to recover damages from Young without alleging and proving that the intentional act or gross negligence of Young caused Bynum's injuries. There was neither such allegation nor proof.

We have carefully studied the statement of facts. We think the language of Judge Hickman in Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022, 1024, is applicable here, to-wit:

"The evidence presents a familiar picture of a fine, friendly relationship between two families, each glad to contribute to the happiness and welfare of the other. We find in it no suggestion from which a legitimate inference could be drawn that such relationship was commercialized by the plaintiff's hiring out her daughter to the defendant in consideration of the latter's agreement to transport plaintiff to the races. Such an inference would do violence to the.motives of each party. Plaintiff was not in need of a conveyance; she had her own car. According to her testimony she initiated this trip by inviting Mrs. Rowan to go with her in her car to the races. What she did was not for the purpose of earning transportation for herself, but for the neighborly purpose of enabling her friend, Mrs. Rowan, to get away from the sick room and attend the races. As was well said by the Supreme Court of Connecticut in the case of Chaplowe v. Powsner, 119 Conn. 188, 175 A. 470, 472, 95 A.L.R. 1177, the situation 'is barren of such definite relations, contractual or otherwise, and of such tangible mutual benefits as the statute contemplates in order to remove the plaintiff from the status of a guest and the consequences attaching thereto.' Like conclusions have been announced in somewhat similar states of fact in the following cases: Master v. Horowitz, 237 App.Div. 237, 261 N.Y.S. 722, affirmed, 262 N.Y. 609, 188 N.E. 86; Syverson v. Berg, 194 Wash. 86, 77 P.2d ·382; McCann v. Hoffman, 9 Cal. 2d 279, 70 P.2d 909; Flynn v. Lewis,

231 Mass. 550, 121 N.E. 493, 2 A.L.R. 896; Audia v. DeAngelis, 121 Conn. 336, 185 A. 78.

"The fact that the trip may have been for the mutual pleasure of the plaintiff and defendant, does not operate to change the status of the plaintiff from that of guest. Raub v. Rowe, Tex.Civ.App., 119 S.W.2d 190, error refused.

"Having concluded that plaintiff was a guest of defendant, and not a passenger, the question of defendant's liability must be determined under the terms of our guest statute * * *."

In Burt v. Lochausen, Tex.Sup., 249 S.W.2d 194, 198, Judge Griffin said:

"We agree with the unanimous opinion of the Court of Civil Appeals, that Burt was the guest of Lochausen on the occasion in question, and was not a mere passenger in Lochausen's car, as is expressed by the court's majority opinion, as follows ([Burt v. Lochausen, Tex.Civ.App.] 244 S.W.2d 917):

" 'The rule established by the authorities everywhere seems to be, to remove a case from the provisions of such statutes a definite relationship must be established and a definite tangible benefit to the operator shown to have been the motivating influence for furnishing the transportation. The rule is firmly established in the decisions of this State, Raub v. Rowe, Tex. Civ.App., 119 S.W.2d 190 (e. r.); Franzen v. Jason, Tex.Civ.App., 166 S.W.2d 727 (e. r.); Henry v. Henson, Tex.Civ.App., 174 S.W.2d 270 (e. r.), and to which might be added many other cases.

" 'The benefits suggested by plaintiff are thought to be too uncertain, remote, and speculative to be definite and tangible. See Leete v. Griswold Post [No. 79], American Legion, 114 Conn. 400, 158 A. 919 (and our statute is copied from the Connecticut statute).' "

In Raub v. Rowe, Tex.Civ.App., 119 S.W.2d 190, 193 (Writ Ref.), it was held that an agreement of a person to pay his proportionate share of the operating expenses of an automobile in which he was riding did not make him a passenger for compensation. See also Henry v. Henson, Tex.Civ.App., 174 S.W.2d 270, 274 (Writ Ref.) and Hasbrook v. Wingate, 152 Ohio St. 50, 87 N.E.2d 87, 10 A.L.R.2d 1342, 1347, and the annotation at pages 1351 to 1370.

It is evident from appellee's testimony that there was no definite tangible benefit conferred on Young by Bynum's presence in the automobile that influenced Young to furnish Bynum's transportation; that Bynum was there to help his mother; that this was not a trip made for the joint benefit of Young and Bynum but taking Bynum's mother to Midland was induced by a fine, friendly family relationship, where each was willing to contribute to the happiness and welfare of Bynum's mother; that what Mr. Bynum did was not for the purpose of earning his transportation but because of such relationship and the desire to care for his mother; that the situation was barren of any such definite, tangible benefit to Young as the statute contemplates in order to remove Bynum from the status of a guest.

There being neither allegation nor proof that the accident was intentional or that Young was guilty of gross negligence and the evidence showing conclusively that Bynum was a guest the judgment is reversed. The case appearing to have been fully developed and there being no intimation that any material additional evidence pertinent to such relationship can be produced judgment is rendered for appellant.